UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17CR134 CDP/NCC |
| ) | |
| LARON HUTCHINS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM, AND REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Defendant filed a Motion to Suppress Statements (Doc. No. 42) and he also made an oral request for an Order suppressing all evidence that was seized.[1] The government filed its response (Doc No. 44). Based on the evidence and testimony adduced, as well as a review of the transcript of the hearing held in this matter; and having had an opportunity to evaluate the credibility of the witness presented and to observe his behavior, the undersigned makes the following finds of fact and conclusions of law.

**FINDINGS OF FACT**

On February 7, 2017, St. Louis County Police Detective Kevin Trott, who was working as a uniformed patrolman for his police department on this date, stopped a vehicle traveling past him on Torii Drive. The street is a U-shaped two-way drive at an apartment complex.

---

[1] *See Transcript of Hearing*, p. 42.

It was a clear afternoon at around noon when Det. Trott saw a gray Dodge Charger directly to the left of his patrol vehicle travel past him on the driver's side within several feet, heading in the direction of northbound Hanley Road. He observed that the vehicle's license plates were expired with a 2016 sticker. The state-issued vehicle sticker is approximately 2 inches in size.

Det. Trott made a U-turn to follow the Dodge out of the apartment complex, and he conducted a records check on his in-car computer of the license plate. He determined that the expired license plates on the Dodge Charger were registered to a Toyota. Det. Trott turned on the lights of his marked patrol car and conducted a traffic stop north of I-70 near Evans Road.

Det. Trott approached the vehicle from behind and saw three male occupants seated inside. There was a front-seat passenger and a rear-seat passenger in addition to the driver. The windows of the car were open. Det. Trott saw the rear passenger, seated behind the driver, lean down toward the floorboard and move his arms. He saw the passenger's right shoulder dip for two to three seconds. The front-seat passenger, who was later identified as defendant Laron Hutchins, made a similar lean toward the floorboard. Det. Trott was concerned for his safety because he did not know whether the passengers were concealing something on the floorboard or underneath the seats.

Det. Trott saw a handgun underneath the back of the driver's seat. He asked the rear-seat passenger whether there were weapons in the car. Det. Trott also smelled marijuana coming from the vehicle and he asked the driver about the smell. The driver told him that the occupants just finished smoking. Det. Trott obtained pedigree information from the driver and while they talked, he saw the rear passenger continue to shove his feet underneath the driver's seat. Det. Trott told him to stop and the rear passenger complied. Det. Trott then walked around the front

of the vehicle to talk to the front passenger.  Around this time, Officer Hollocher[2] with the St. Louis County police arrived to assist him.

 Det. Trott asked the front-seat passenger for his pedigree information, including a name. The passenger stated that his name was Michael Moreland.  Det. Trott noticed that the passenger spoke nervously, and stuttered over his words.  The front passenger could not remember his social security number or his age.  Det. Trott also saw a large, extended magazine clip attached to a silver handgun that was partially visible underneath the front seat.  He was aware that such clips hold a large capacity of ammunition.  Det. Trott asked again whether there were firearms in the Dodge.  The front passenger said no and looked down at the floorboard and shifted the butt of the magazine with his right heel toward the rear of the vehicle underneath the passenger seat. In Det. Trott's experience, lawful possessors of firearms typically do not make furtive movements when asked about firearms in a vehicle, and they disclose that those firearms are present.  Det. Trott had ten years of experience as a police officer when these events occurred.

 Det. Trott reported what he observed to Officer Hollocher, who had parked his vehicle behind Det. Trott's patrol car on the side of Hanley Road, and Officer Hollocher stood near the rear of the Dodge.  Det. Trott went to his vehicle to run record checks on the names of the occupants.  The driver had several traffic warrants.  The rear passenger was on probation and had a felony conviction.  There were "negative" computer search results for Michael Moreland, the name given by the front-seat passenger.

 Det. Trott returned the Dodge and asked the driver to step out of the vehicle.  The driver was arrested and handcuffed.  The driver was secured near Officer Hollocher.  Next, Det. Trott had the front-seat passenger exit the Dodge and he consented to a pat-down search of his person.

---

[2] First name is not identified in the record.

No items of evidence were found.  The backseat passenger also consented to a search of his person and no items of evidence were found.

Neither passenger was handcuffed as they stood with their backs against the Dodge and were watched by Officer Hollocher after the pat-down searches.

Det. Trott began to search the Dodge upon obtaining consent from the driver and because he smelled marijuana when he approached the vehicle.  The driver did not appear to be impaired by drugs during the traffic stop.  Det. Trott found a black firearm under the driver's seat but he did not move it.

Det. Trott then approached and told the rear-seat passenger, Michael Hodge, that he was under arrest.  Det. Trott attempted to handcuff Hodge, who yelled an expletive at him and ran away.  The front-seat passenger also took off running in the same direction.  Det. Trott got in his patrol car and drove in the direction of the fleeing men.  Officer Hollocher did not give chase. He stayed with the handcuffed driver at the Dodge.

At some point during the chase, Det. Trott exited his vehicle and ran into a wooded area where he saw the two men sitting on a hill.  He said, "Stop, you're under arrest.  Stop resisting." The two men took off running again, and Det. Trott chased them on foot up a hill.  The distance from the Dodge was no more than 1,000 feet.  Sergeant Ryan with the county police department also responded to the scene and the officers stopped the two men.  Det. Trott arrested the front-seat passenger and read him his *Miranda* rights from a card that he carries.  The rights are as follows:

> You have the right to remain silent.  Anything you say can and will be used against you in a court of law.  You have the right to an attorney and to have your attorney present while you're being questioned.  If you want an attorney and cannot afford one, one will be appointed to you before any questioning.

4

Defendant was not tackled or beaten upon arrest.  Officers did not use a taser.  Defendant affirmed that he understood his rights.  Det. Trott asked defendant for his real pedigree information and he identified himself as Laron Hutchins.  Defendant made an incriminating statement about his parole status.  Officers took the two passengers back to their patrol cars and secured them.

Det. Trott returned to the Dodge and continued the search of the vehicle.  He found a silver handgun with an extended magazine under the front passenger seat.  He informed defendant Hutchins that he was under arrest for unlawful use of a weapon.

## DISCUSSION

**Motion To Suppress Statements (Doc. #42)**

**A.     The Traffic Stop Did Not Violate the Fourth Amendment**

Defendant's argument that Det. Trott had no basis to conduct a traffic stop is not supported by the record.  This point should be denied for the following reasons.

"A traffic stop is considered a seizure for Fourth Amendment purposes." *United States v. Guevara*, 731 F.3d 824, 827 (8th Cir. 2013).  "In order to justify the seizure, the stop must be 'supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred.'" *Id.* (quoting *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006)).  *See also Heien v. North Carolina,* ––– U.S. ––––, 135 S.Ct. 530, 536 (2014) (opining that reasonable suspicion exists when an officer has a "particularized and objective basis for suspecting the particular person stopped of breaking the law.") (internal quotation marks omitted).  "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Id.* (some internal quotation marks omitted), *quoting Riley v. California,* ––– U.S. ––––, 134 S.Ct. 2473, 2482 (2014).  "The determination of whether ... reasonable suspicion existed is not to be made

with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *United States v. Hollins,* 685 F.3d 703, 706 (8th Cir. 2012) (internal quotation marks omitted). "Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." *United States v. Givens,* 763 F.3d 987, 989 (8th Cir. 2014) (internal quotation marks omitted). *United States v. Gaffney*, 789 F.3d 866, 868 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 1229 (2016).

The Eighth Circuit has also held that "[a] traffic violation—however minor—creates probable cause to stop the driver of a vehicle." *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008) (quoting *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc)). *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004). A passenger has standing to challenge a traffic stop's constitutionality. *Brendlin v. California*, 551 U.S. 249, 256-259 (2007). The government bears the burden of establishing that probable cause existed under the totality of the circumstances. *United States v. Andrews*, 454 F.3d 919, 922 (8th Cir. 2006).

In this case, Det. Trott approached the Dodge with the occupants still inside it and noticed a firearm behind the driver's seat, and he questioned the occupants to determine the identity of the driver and passengers. Det. Trott smelled marijuana inside the car during these events, and he observed defendant's nervousness and stammering. Defendant denied that firearms were present in the vehicle and he made an effort to conceal the firearm underneath his seat. Det. Trott was aware, in his experience, that lawful possessors of firearms tend to disclose that information during a traffic stop when asked. All of this created a sufficient basis to expand the scope of the stop because defendant may have been transporting contraband.

Moreover, Det. Trott could not confirm defendant Hutchins' identity under the name he provided. "When police stop a motorist for a traffic violation, an officer may detain the

6

occupants of the vehicle while the officer 'completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007) (quoting *United States v. $404,905.00,* 182 F.3d 643, 647 (8th Cir. 1999)). These may include a check of a driver's license, vehicle registration, and criminal history, and the writing of the citation or warning. While the officer performs these tasks, he may ask the occupants routine questions, such as the destination and purpose of the trip, and the officer may act on whatever information the occupants volunteer. *Id.* There is no evidence that officers asked questions of Hutchins or anyone else that were outside the scope of general inquiries related to the traffic stop. Even if officers had asked an off-topic question during an otherwise lawful traffic stop, such an inquiry would not violate the Fourth Amendment. *Muehler v. Mena*, 544 U.S. 93, 101 (2005)(rejecting the notion that police questioning on unrelated matters to the detention constituted a "discrete Fourth Amendment event.").

Det. Trott was aware that there were three occupants of the vehicle and each person had individual information to be collected and processed. He saw two firearms in the passenger compartment, partially hidden under the seats. The driver had outstanding warrants and defendant's information generated no results after he gave the name "Michael Moreland." There is also the matter that the expired sticker on the license plate was registered to another vehicle, which is an offense punishable as an infraction and subject to a fine. *See* Mo. Rev. Stat. §§ 301.130 and 301.440. All of these factors created a reason for Det. Trott to investigate further until he determined defendant's true identity, along with gathering pedigree information for the other occupants. The decision to conduct the traffic stop was based on probable cause, and the stop was of reasonable length and scope.

7

1.     **The Driver Gave Consent To Search**

To the extent that defendant Hutchins contends that his statements are tainted by an illegal traffic, such an argument is unavailing. There is no evidence that defendant Hutchins has a possessory interest in the vehicle and, therefore, he lacks a legitimate expectation of privacy in it to raise a valid objection to the search or the seizure of the firearms. And there is sufficient evidence that the driver gave voluntary consent to search the vehicle.

Hutchins does not argue that he owned the Dodge Charger and he was not the driver. He has not met his burden to show that he had a reasonable expectation of privacy that was violated by the search of the car and the seizure of firearms. *Rawlings v. Kentucky*, 448 U.S. 98 (1980). *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Matlock*, 415 U.S. 164, 171 (1974) (holding that consent may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched). Common authority is a function of mutual use, joint access, and control, *United States v. Bradley*, 869 F.2d 417, 419 (8th Cir. 1989), and is a question of fact. *United States v. Baswell*, 792 F.2d 755, 758 (8th Cir. 1986). Fourth Amendment rights are personal, "and cannot be asserted vicariously." *United States v. Perry*, 548 F.3d 688, 691 (8th Cir. 2008). Defendant's challenge to the search of a third party's property depends upon "whether government officials violated any legitimate expectation of privacy held by [him]." *Rawlings v. Kentucky*, 448 U.S. at 106. A third party "has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable; that is, one that society is willing to accept." *United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999).

The driver gave consent to search the Dodge Charger. And there is no evidence that the consent was not knowing or voluntary. "The Fourth Amendment permits the warrantless search

8

of an automobile for contraband if an officer has obtained voluntary consent to search, as long as the search stays within the scope of the consent." *United States v. Zamora-Garcia*, 831 F.3d 979, 982 (8th Cir. 2016)(citation omitted). This point should be denied.

### 2. The Smell Of Marijuana Was Present In the Vehicle

An investigative *Terry*-type stop is proper if a police officer "has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Vinson*, 805 F.3d 1150, 1151 (8th Cir. 2015) (quoting *United States v. Roberts*, 787 F.3d 1204, 1209 (8th Cir. 2015) (internal quotation marks omitted)). The officer need only "articulate some minimal, objective justification for an investigatory stop" in order to comply with the Fourth Amendment. *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The smell of marijuana and the statement by the driver that the occupants had just smoked gave rise to sufficient facts to support a reasonable suspicion of wrongdoing that justified further intrusion into the vehicle and Det. Trott's search.

### 3. The Automobile Exception Applies

Moreover, under the automobile exception to the warrant requirement, an officer with probable cause to search a vehicle may search any item within that vehicle that is capable of containing the object of the search, regardless of whether the item belongs to the driver, passenger, or someone else. *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999). "If probable cause justifies the search of lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). *See also United States v. Shackleford*, 830 F.3d 751, 753 (8th Cir. 2016)("Probable cause to believe that an automobile contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the automobile and seizure of the

9

contraband.")(citations omitted). Officers had probable cause to search the Dodge Charger. Accordingly, officers could conduct a warrantless search on this basis, and the firearms should not be suppressed.

### C. Defendant's statements should not be suppressed

The parties agree that Hutchins was under arrest when he made an incriminating statement. He does not directly challenge the circumstances of his arrest. Rather, defendant argues that *but for* the illegal traffic stop, his post-arrest statement would not have been obtained. The government counters that Hutchins made a knowing and voluntary waiver of his right to remain silent. The government's view is supported by the evidence and defendant's point should be denied.

When a defendant is both in custody and interrogated, he must be advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A defendant's waiver of his Miranda rights must be made voluntarily, knowingly and intelligently. *Id.* "Officers must provide Miranda warnings to suspects in custody because 'the inherently coercive nature of custodial interrogation blurs the line between voluntary and involuntary statements.'" *United States v. Diaz*, 736 F.3d 1143, 1148 (8th Cir. 2013) (quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011)) (internal quotation marks omitted). *See United States v. Crisolis–Gonzalez*, 742 F.3d 830, 836 (8th Cir. 2014) ("Interrogation in the Miranda context refers to express questioning and to words or conduct that officers should know is reasonably likely to elicit an incriminating response from the suspect." (quotation omitted)). "The government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence." *United States v. Haggard,* 368 F.3d 1020, 1024 (8th Cir. 2004). The court must examine the waiver by looking

10

"at the totality of the circumstances and must determine whether the individual's will was overborne." *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002).

First, the undersigned finds that defendant's arrest was based on probable cause. "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010). Additionally, Hutchins is an adult who has had contact with the police in the past. There is no evidence that he was under the influence of drugs or alcohol at the time he made statements to Det. Trott, who interviewed him. There is no evidence that he was mentally infirm. He offered an explanation as to why he fled, which suggests his willingness to engage the officer. All of this suggests that defendant understood what was said to him and his responses to police questions were intelligent and freely given. Defendant was not threatened, intimidated or otherwise abused by the officers during the questioning. Because the statements were not the result of any threats, promises or coercion by the officers, his statements were voluntary. *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Laron Hutchins' Motion to Statements (Doc. No. 42) be **DENIED**.

**IT IS HEREBY ORDERED** that this cause is set for trial before United States District Judge Catherine D. Perry on **December 18, 2017 at 8:30 a.m.**

The parties are advised that they have fourteen (14) days to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for

good cause is obtained. Failure to timely file objections may result in the waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).

/s/Noelle C. Collins
United States Magistrate Judge

Dated this 23rd day of October, 2017.